```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
RANGE ROAD MUSIC, INC., ET AL.,

                Plaintiff(s),

     - against -                              97 Civ. 3098 (JES)

MUSIC SALES CORP., ET AL.,                    MEMORANDUM OPINION
                                                  AND ORDER

                Defendant(s).
----------------------------------------X
```

**SPRIZZO, D.J.:**

This action comes before the Court on a Trial record and renewed cross-Motions for Summary Judgment by plaintiffs Range Road Music, Inc. ("Range Road"), Jerry Leiber ("Leiber"), and Mike Stoller ("Stoller") and defendant Music Sales Corporation ("MSC"). These motions follow a Trial on plaintiffs' claims for copyright infringement during the extended renewal terms of two copyrights allegedly owned by plaintiffs. For the reasons set forth below, both plaintiffs' and defendant's Motions are denied, and judgment is entered on the Trial record. The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a).

### BACKGROUND

Composer Jimmy Van Heusen ("Jimmy") copyrighted the two songs at issue in this case, "I Thought About You" and "Darn That Dream" in 1939. See MSC's Rule 56.1 Statement, dated June 29, 2006 ("MSC's 56.1 Stmt.") ¶ 1. The Copyright Act of 1976 provides for 75 years of protection for copyrightable works - the original 28-year term, one 28-year renewal term, and a 19-year extended term. 17 U.S.C. § 304(a)(2)(A). The extended copyright terms, the period at issue in this case, began on January 1, 1996. See Range Road I, 76 F. Supp. 2d 375, 378 (S.D.N.Y 1999); 17 U.S.C. § 305 (copyright terms run to the end of the calendar year in which they would otherwise expire); see also Pls.' Mem. of Law, dated July 7, 2006, at 7.

During the first and second terms, the copyrights were assigned to Van Heusen Music Publishing Corporation and Lewis Publishing

("Lewis"), respectively. See Range Road I, 76 F. Supp. 2d at 377-78. In 1986, after effecting notice of termination upon Lewis, Jimmy and his wife Josephine Van Heusen ("Josephine") attempted to assign their rights in the two songs to Bienstock Publishing ("Bienstock"). See id. at 378.  Bienstock then assigned its rights to the plaintiffs. See id.  Plaintiffs claimed ownership of the copyrights under this assignment until 1999, when this Court found the Bienstock assignment "invalid on its face" due to its failure to conform to the procedural requirements for transfer under the Copyright Act and held that "Bienstock conveyed nothing to the plaintiffs." See id. at 381.

Plaintiffs also based their claim of ownership of the copyrights on a 1995 Confirmation of the Bienstock agreement executed by Josephine, then Jimmy's widow, in which she affirmed all grants made in the Bienstock agreement "as if they were made on the date hereof." See id. at 378, 381.  Holding that the 1995 Confirmation contained words of "fresh grant," this Court found that the 1995 Confirmation complied with the requirements for transfer in the Copyright Act. See id. at 381.  Therefore, if Josephine had the right to transfer the extended renewal terms at that time, as a result of the 1995 Confirmation, plaintiffs owned the copyrights during the extended renewal terms. See id.  Both parties sought summary judgment in 1999 on these claims of ownership. See id. at 375.  The Court denied both Motions because (1) defendants failed to establish whether or not California's community property law applied to ownership of the copyrights, and (2) plaintiffs failed to establish that Josephine owned any rights to the copyrights in 1995, because Jimmy's will was not yet probated, even though he died in 1991. See id. at 383.

Upon Jimmy's death, his estate consisted of the two compositions at issue in this action. See  MSC's 56.1 Stmt., Ex. J ¶ 7.  His estate was governed by a 1983 will.  See MSC's 56.1 Stmt., Ex. O. Under the will, title to the compositions vested in the trustee of a testamentary trust, because they fell into the estate's residue. See  MSC's 56.1 Stmt., Ex. K ¶ 4.  Income from the trust accrued to the benefit of Jimmy's widow, Josephine. See MSC's 56.1 Stmt., Ex.

M at 3.  On May 2, 1999, Josephine Van Heusen died. <u>See</u> MSC's 56.1 Stmt. ¶ 17.  Upon her death, the trust estate should have passed, free of trust, to Donald Babcock, Jimmy's nephew.[1] <u>See</u> MSC's 56.1 Stmt., Ex. J ¶ 18; Ex. L ¶ 4.

In 2000, Babcock, in turn, executed the "Babcock Agreement," attempting to transfer "all right, title and interest [to] . . . renewal copyright interests in the Songs, together with all existing claims, causes of action and rights based thereon or thereto accrued" to Range Road, Leiber, and Stoller as of November 25, 1995.[2] <u>See</u> Decl. of Jonathan J. Ross in Supp. of Pl.'s Mot. for Summ. J. ("Ross Decl."), Ex. 4 at 2.

Due in part to the delay in probating Jimmy's will, years of litigation ensued.  Plaintiffs moved for reconsideration of their Motion for Summary Judgment; this Motion was denied by the Court in March 2000. Mem. Op. & Order, dated March 29, 2000.  Plaintiffs' Motion renewing their cross-Motion for Summary Judgment was also denied.  Summ. Order, dated August 31, 2000.  The Court held a bench Trial in December 2000 and reserved decision until Oral Argument in March 2001. Trial Tr., dated December 18, 2000 ("December Tr."), at 46-47.  At that time, the Court ordered plaintiffs to commence probate of Jimmy's will in California. <u>See</u> Trial Tr., dated March 5, 2001 ("March Tr."), at 38; <u>see</u> <u>also</u> <u>Range Road I</u>, 76 F. Supp. 2d at 383.  The case was placed on the Court's suspense docket during this period. Order, dated December 23, 2002.

In February 2004, the California probate court held that MSC has no ownership or legal title to the copyrights or extended terms in the compositions and that legal title to the compositions was vested in the Estate pending approval of an amended Final Report and

---

[1]  This estate may have passed under the terms of the will, but it was not finally distributed until the will was probated and the California court issued a Final Report in 2005.

[2]  The extended term is functionally a second renewal period. Given that this Agreement was predated to November 25, 1995, one day after the later of the two dates recited as effective dates of termination in the notice of termination, this transfer must refer to the extended terms.

Petition for Distribution. See MSC's 56.1 Stmt., Ex. L ¶¶ 2, 4. Upon the issuance of that Final Report in October 2005, the compositions (and the extended terms of the copyrights) were distributed to plaintiffs in this action. See MSC's 56.1 Stmt., Ex. O.

Currently before this Court are the Trial record and pending cross-Motions for Summary Judgment addressing the date on which damages began to accrue and any applicable statute of limitations defenses, filed in the summer of 2006. MSC's Mem. of Law, dated July 10, 2006; Pls.' Mem. of Law, dated July 7, 2006. The Court held Oral Argument on these Motions on October 5, 2006.

## DISCUSSION

To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). As neither party disputes that MSC copied the songs, judgment hinges on ownership of the extended terms of the copyrights. See Range Road, 76 F. Supp. 2d at 379. Since this Court held the Bienstock agreement to be invalid, and plaintiffs were unable to establish Josephine's ownership of the renewal terms in these copyrights in 1995 when she issued the Confirmation, this Court was unable to determine ownership of the copyrights in previous motions for summary judgment and at trial. See id. at 381, 383; Range Road Music, Inc. v. Music Sales Corp., 90 F. Supp. 2d 390, 393 (S.D.N.Y. 2000); December Tr. at 46-47. With the benefit of the California court's ruling as to the ownership of the copyrights, this Court now denies both cross-Motions for Summary Judgment and enters judgment for plaintiffs on the Trial record.

From the beginning of the extended terms on January 1, 1996 through Josephine Van Heusen's death in 1999, the compositions,

including their copyrights, belonged to Jimmy's estate.[3]  Josephine was entitled to the income from the testamentary trust to be created under his will.  See MSC's 56.1 Stmt., Ex. M at 3.  Though Jimmy's future interests in the copyrights vested as early as 1985, when he sent termination notices to Lewis, the extended terms passed to Jimmy's estate upon the effective date of termination.  See Range Road I, 76 F. Supp. 2d at 381-82.  Until that time, Josephine, the income beneficiary under the will, was entitled only to the author's share of royalties.  Once the renewal period ended and the extended terms passed into the estate, however, all income from these copyrights–including both the composer's share and the publisher's share of royalties–belonged to Josephine.

In 1995, Josephine assigned her rights to Bienstock, which then assigned to plaintiffs all rights that Bienstock acquired from Josephine's 1995 assignment.  See Range Road I, 76 F. Supp. 2d at 378.  At the time of Josephine's assignment to Bienstock, she was only entitled to receive income from the compositions; she did not possess legal title to them.  Following Jimmy's death, the defendant routinely paid a portion of this income, the composer's share of royalties, to Jimmy's estate.[4]  See MSC's 56.1 Stmt. ¶¶ 13-15.  To the extent that there was any still unpaid composer's share and any unpaid publisher's share of the profits owing to Josephine pursuant to her position as beneficiary under the will, plaintiffs, as assignees of Josephine's rights through the 1995 confirmation, are

---

[3]  Whether or not the compositions were technically held in trust during the period between Jimmy's and Josephine's deaths, as indicated by Jimmy's will, the compositions remained in Jimmy's estate pending final distribution in 2005.

As of the date of Jimmy's death, the copyrights were still in the renewal period and had been assigned to the defendants. Therefore, at that point, only vested future rights to the copyrights belonged to the estate. See Range Road I, 76 F. Supp. 2d 375, 381. They remained only vested future rights until termination of the renewal period.

[4]  These royalties were technically paid to an intervivos trust set up by Jimmy and Josephine, and later, on the instruction of Donald Babcock, to the estate in his care.  MSC's 56.1 Stmt. ¶ 15. The royalties should have been paid to a testamentary trust formed under the will.

entitled to this publisher's share for the period from January 1, 1996 to May 2, 1999.

The second applicable period of ownership of the extended terms is from Josephine's death on May 2, 1999 to the present. After Josephine's death, the copyrights passed to Donald Babcock under the will. See MSC's 56.1 Stmt., Ex. J ¶ 18; Ex. L ¶ 4. However, Babcock's rights did not become transferable until October 27, 2005, when the Final Report was issued by the California probate court. MSC's 56.1 Stmt. II, Ex. O. That court found that Donald Babcock "had the ultimate right to receive such distribution, but [he could] not to pass legal title" until the Final Report was issued. See MSC's 56.1 Stmt., Ex. K ¶ 7.

Plaintiffs claim that Babcock had certain beneficial ownership rights which he transferred to Range Road in the Babcock Agreement. Pls.' Mem. of Law in Opp'n to Def.'s Mot. for Summ. J., dated September 9, 2005 ("Pls.' Opp'n"), at 11-13. However, this Court need not resolve questions of beneficial ownership or interpret California probate law for purposes of the second period because the purported assignment under which the question of beneficial ownership and the rights arising therefrom–the Babcock Agreement–was not mentioned in the Complaint or even in existence at the time of its filing in 1997. Nor can the Court amend the pleadings under Fed. Rule Civ. P. 15(b) to conform to evidence not in existence at the time of the pleadings. Therefore, the Babcock Agreement cannot be the basis for damages in this action.[5]

---

[5] The Court must therefore reject plaintiffs' argument that the amendment of the pleadings to include the Babcock Agreement relates back to the filing of the initial Complaint. See Pls.' Mem. of Law in Opp'n to Def.'s Mot. for Summ. J., dated July 31, 2006, at 6-7. An amended complaint cannot relate back when the amendment is not appropriate in the first place. Additionally, at the Trial in December 2000, the Babcock Agreement was held inadmissible as evidence by this Court. April Tr. at 6. As this was a non-jury trial, the Court accepted all exhibits proffered subject to a motion to strike. December Tr. at 20-21. Defendant argued in its Post Trial Brief that the Babcock Agreement was inadmissible for failure to authenticate. Def.'s Post-Trial Brief, dated January 30, 2001, at 5-9. At Oral Argument on March 5, 2001, this Court held that the Babcock Agreement was neither self-authenticating (because it was notarized by a notary in a different state than the place where it

## CONCLUSION

Based on the foregoing, plaintiffs are entitled to the composer's and publisher's royalties from the beginning of the extended renewal period until Josephine's death. A Pre-Trial Conference to set a date for Trial on damages shall occur on March 1, 2007 at 3:00 p.m. in Courtroom 21C, 500 Pearl Street.

**It is SO ORDERED.**

DATED:    New York, New York
          January 23, 2007

                                              _____
                                              John E. Sprizzo
                                              United States District Judge

---

was signed), nor authenticated at Trial through testimony. <u>See</u> March Tr. at 6, 9. Since it was not part of the trial proof, it cannot be the basis for conforming the complaint to the trial proof.

7

**APPEARANCES**

LABATON SUCHAROW & RUDOFF LLP
Attorneys for Plaintiffs
100 Park Avenue, 12th Floor
New York New York 10017

    JONATHAN J. ROSS, ESQ.

        Of Counsel


LAW OFFICES OF ALAN L. SHULMAN
Attorneys for Plaintiffs
200 Park Avenue South
New York, New York 10003

    ALAN L. SHULMAN, ESQ.

        Of Counsel


HARVEY STUART, ESQ.
Attorney for Defendant
575 Lexington Avenue, Suite 410
New York, New York 10022


EDWARD M. CRAMER, ESQ.
Attorney for Defendant
110 East 59th Street, Suite 3201
New York, New York 10022